UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT MILLER,

        Plaintiff,

  -against-

NETVENTURE24 LLC,

        Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/6/21

19-CV-7172 (LGS) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. LORNA G. SCHOFIELD**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Robert Miller, a professional photographer, filed this action under the Copyright Act, 17 U.S.C. § 101, *et seq*., and the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1201, *et seq*., after defendant Netventure24 LLC (Netventure) displayed four of Miller's copyrighted photographs on its website without permission, license, or payment. On November 5, 2019, the Honorable Lorna G. Schofield, United States District Judge, issued a default judgment against Netventure and referred the action to me to conduct an inquest into damages. (Dkt. Nos. 29, 30.)

For the reasons that follow, I respectfully recommend that plaintiff be awarded $14,000 in statutory damages under the Copyright Act, $10,000 in statutory damages under the DMCA, and $4,235 and $728.50 in attorneys' fees and expenses, respectively.

I.     **BACKGROUND**

    A.     **Factual Allegations**

Plaintiff, a professional photographer who resides in New York City, licenses or sells his photographs to various media outlets such as the *New York Post*, the *New York Times*, and *Rolling Stone* magazine. Complaint (Compl.) (Dkt. No. 1) ¶ 11. Miller is the sole author and exclusive rights holder of the four photographs at issue in this case (collectively, the Images): (1) a photograph of police officers in front of a storefront (Image 1); (2) a photograph of a New York

City shuttle bus (Image 2); (3) a photograph of Gus Kassimis, the former owner of Tivoli Café in New York City (Image 3); and (4) a photograph of Norman Seabrook, a former chief of the Correction Officers' Benevolent Association union (Image 4). *Id.* ¶ 12 & Ex. B. Miller registered Images 1, 2, and 3 with the United States Copyright Office on September 25, 2018, and registered Image 4 on October 23, 2018. *Id.* ¶ 13; Proposed Findings of Fact and Conclusions of Law (Prop. Findings) (Dkt. No. 32) ¶¶ 4-5.

The Images were originally published in four different articles "featured in the New York Post" in the summer of 2018. Compl. ¶¶ 14-17. Image 1 appeared in an article on July 1, 2018; Image 2 on July 6, 2018; Image 3 on July 27, 2018; and Image 4 on August 2, 2018. *Id.* On the bottom left corner of each photo was a "gutter credit" attributing the Images to Miller. *Id.* ¶ 18.

Netventure, which plaintiff describes as a "Delaware corporation," Compl. ¶ 6,[1] produces a "New York specific online publication" through the website NewYorkCityInformer.com, where it posts content targeted to New York City in the form of articles and photographs. Compl. ¶ 7. Shortly after the Images appeared in the *New York Post*, Miller discovered that Netventure had used them in articles on its own website. Miller made the discoveries on July 17 (as to Images 1 and 2), July 28 (as to Image 3), and August 3 (as to Image 4). *Id.* ¶¶ 19-22 & Ex. C. None of the infringing articles provided credit to Miller for the Images. *Id.* ¶ 24. Moreover, Netventure did not license the Images from plaintiff for its articles, nor did it have plaintiff's permission or consent to publish the Images on its website. *Id.* ¶¶ 26, 27.

---

[1] The website of the Delaware Department of State, Division of Corporations, available at https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx (last visited August 6, 2021), identifies defendant as a Delaware limited liability company.

### B.    Procedural History

Miller filed this action on July 31, 2019, alleging that Netventure violated: (1) the Copyright Act, by reproducing and publicly displaying the Images on its website without permission, license, or consent, Compl. ¶¶ 28-33; and (2) the DMCA, by falsifying the copyright management information (CMI) on the Images when it republished them without the gutter credit identifying Miller as the photographer. *Id.* ¶¶ 34-41.

On August 14, 2019, plaintiff served Netventure with process through its registered agent. *See* Acknowledgment of Service (Dkt. No. 10). Netventure failed to appear, answer, or otherwise respond. On September 23, 2019, at plaintiff's request (Dkt. No. 18), the Clerk of Court issued a Certificate of Default (Dkt. No. 19), and on September 27, 2019, also at plaintiff's request (Dkt. No. 21), Judge Schofield ordered Netventure to show cause why a default judgment should not be entered against it pursuant to Fed. R. Civ. P. 54(b) and 55(b). *See* Order to Show Cause (Dkt. No. 23). Plaintiff promptly served the Order to Show Cause and supporting papers on Netventure through its registered agent. *See* Affidavit of Service (Dkt. No. 27). On November 5, 2019, the date of the show-cause hearing, Netventure failed to appear. Judge Schofield thereafter issued the default judgment and referred the case to me for a damages inquest.

On November 6, 2019, I issued a scheduling order (Dkt. No. 31) directing plaintiff to file his Proposed Findings of Fact and Conclusions of Law no later than November 22, 2019, and to serve his inquest papers on defendant Netventure. *Id*. at 1. The Scheduling Order also set a deadline of December 13, 2019 for Netventure to file its response, if any. *Id.* at 4.

Plaintiff submitted his Proposed Findings on November 22, 2019, along with an Affidavit of Service (Dkt. No. 33) showing that he served Netventure by mail. Plaintiff seeks $34,000 in statutory damages for copyright infringement under 17 U.S.C. §§ 101 and 504(c); $10,000 in

statutory damages under 17 U.S.C. §§ 1202(a) and (b); and $4,235 in attorneys' fees and $728.50 in costs under 17 U.S.C. §§ 505 and 1203(b). Prop. Findings ¶¶ 50, 57, 61.

Once again, Netventure failed to respond.

Since neither party has requested a hearing on the issue of damages, and since defendant did not submit any written materials, I have conducted the inquest based solely upon the materials submitted by plaintiff. *See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (holding that Fed. R. Civ. P. 55(b)(2), which governs the determination of damages following default, "allows but does not require the district judge to conduct a hearing" (quoting *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991))); *De Lage Landen Fin. Servs., Inc. v. Universal Wilde, Inc.*, 2019 WL 4195441, at *3 n.2 (S.D.N.Y. Aug. 15, 2019) (finding that a hearing was not required because plaintiff's sworn declarations were a sufficient basis on which to make a damages calculation), *report and recommendation adopted*, 2019 WL 4194574 (S.D.N.Y. Sept. 3, 2019).

## II.    JURISDICTION AND VENUE

Because Miller brought this action under the Copyright Act, subject-matter jurisdiction is properly based on 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (copyright jurisdiction). *See* Compl. ¶¶ 1, 2.

I am also satisfied as to personal jurisdiction over the defendant, which is "a necessary prerequisite to entry of a default judgment." *Sheldon v. Plot Commerce*, 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016).[2] Where, as here, the issue of personal jurisdiction is analyzed "on the pleadings

---

[2] "[A] district court should *not* raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). A non-appearing defendant,

and without discovery, the plaintiff need show only a *prima facie* case" that jurisdiction exists. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). At this stage, moreover, the pleadings "are construed in the light most favorable to plaintiff," and any doubts are resolved in favor of jurisdiction. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

The Copyright Act does not contain its own personal jurisdiction or service provision. Thus, I must first "determine whether the defendant is subject to jurisdiction under the law of the forum state – here – New York," and then "consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).

Under New York law, a non-domiciliary defendant is subject to specific personal jurisdiction here if that defendant:

1.   transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2.   commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3.   commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

---

however, cannot be said to have consented to personal jurisdiction or waived its objections thereto. Moreover, "[a] judgment obtained in the absence of personal jurisdiction is void within the meaning of Rule 60(b)(4)," *de Ganay v. de Ganay*, 2012 WL 6097693, *4 (S.D.N.Y. Dec. 6, 2012) (citation and internal quotation marks omitted), and vulnerable to a later motion to vacate. Before entering a default judgment against a non-appearing defendant, therefore, a district court may – and as a matter of judicial economy should – satisfy itself that it has personal jurisdiction over that defendant. *Sinoying Logistics Pte Ltd.*, 619 F.3d at 213 ("[W]hen a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction."); *Yao Wu v. BDK DSD*, 2015 WL 5664256, at *2 (E.D.N.Y. Aug. 31, 2015) (it "preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment"), *report and recommendation adopted*, 2015 WL 5664534 (E.D.N.Y. Sept. 22, 2015).

(i)    regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii)    expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . .

and if the cause of action sued upon arises from the enumerated act(s). N.Y. C.P.L.R. (CPLR) § 302(a). Plaintiff alleges that this Court may exercise personal jurisdiction over Netventure pursuant to CPLR §§ 302(a)(1) and (a)(3) because Netventure "maintains contacts within the state of New York by producing a New York specific online publication, and . . . has committed the tortious act of infringement causing injury to a person within the state of New York." Compl. ¶ 3; *see also* Prop. Findings ¶ 17.

"It has long been observed that technological advances affecting the nature of commerce require the doctrine of personal jurisdiction to adapt and evolve along with those advances." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). Nonetheless, maintaining "contacts" with the State of New York through a "passive" website is not sufficient – standing alone – to subject an out-of-state business to personal jurisdiction under CPLR § 302(a)(1). *See, e.g., A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 568 (E.D.N.Y. 2011) (collecting cases). Generally speaking, a defendant will not be deemed to "transact[ ] . . . business within the state" through its website unless the website is at least somewhat "interactive" and – more specifically – has interacted with New York residents. *See, e.g., Thomas Pub. Co. v. Industrial Quick Search, Inc.*, 237 F. Supp. 2d 489, 492 (S.D.N.Y 2002) (concluding that defendant IQS transacted business in New York through its "interactive website," which among other things permitted residents of New York to "communicate directly via its internet route back to IQS," thereby subjecting it to personal jurisdiction pursuant to CPLR § 302(a)(1)).

6

There is no allegation in the Complaint that Netventure's website, NewYorkCityInformer.com, engaged in any subscription or product sales to New Yorkers or otherwise "interacted" with them beyond providing content which, although New York-themed, was available from any location. Moreover, while common sense suggests that a New York-focused news and information website *likely* sold advertising to New York businesses – or at least to businesses interested in advertising themselves to New York customers – no such allegations can be found in the Complaint. *Cf. Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 359-60 (S.D.N.Y. 2009) (Although defendant Hi5's website did not "sell products or services to its users, but rather 'sells' the users' attention to advertisers," it was subject to personal jurisdiction in New York pursuant to subsection (a)(1) because plaintiff alleged that it "sold advertisements to New York companies and sought to participate in advertising campaigns specifically directed at New York users," and because discovery materials showed that "Hi5 employees touted the company's large New York user base to potential advertisers and responded directly to advertising inquiries from New York-based companies," thus transacting business in New York within the meaning of § 302(a)(1).).

What is clear from the Complaint and its attached screenshots, however, is that the website targeted New York viewers. It advertised itself as providing "Local New York City News and New York Updates" and ran articles focusing on people and events in New York City. Compl. Exs. A, C. It is thus no accident that the four copyrighted Images at issue in this action – used by defendant to illustrate stories about New York City – were all created in New York and depict New York City scenes or New York City residents. Moreover, those Images were first published in the *New York Post*, which is where defendant found them, copied them, and removed the gutter credit before republishing them on its website, thereby causing injury to plaintiff within New York. *See*

7

*Capitol Records, LLC*, 611 F. Supp. 2d at 362-63 (explaining that copyright infringement, even if it occurs out of state, causes injury in the state where the copyright is held); *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 304(2011) ("[A] New York copyright owner alleging infringement sustains an in-state injury pursuant to CPLR 302(a)(3)(ii) when its printed literary work is uploaded without permission onto the Internet for public access."). Consequently, while plaintiff has not established that defendant "transact[ed] . . . business within the state" for purposes of subsection (a)(1), I conclude that he has satisfied subsection (a)(3)(i), in that he has adequately alleged a tortious act that caused injury to a person within the state by a defendant that engaged in a "persistent course of conduct" here. *Cf. Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 131 (S.D.N.Y. 2020) (plaintiff failed to allege a "persistent course of conduct" in New York when it failed to identify "any actions taken by [defendant] targeted specifically at New York"); *Sullivan v. Ringling Coll. of Art & Design, Inc.*, 2019 WL 6529823, at *6 (S.D.N.Y. Dec. 4, 2019) (declining to find that defendant engaged in a "persistent course of conduct" in New York through its website where plaintiff could not allege any "efforts particularly directed at New Yorkers").

Similarly, I conclude that the exercise of personal jurisdiction over the operator of NewYorkCityInformer.com comports with the Due Process Clause of the United States Constitution. "[M]inimum contacts necessary to support [specific personal] jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). Defendant Netventure operated a New York-focused website that targeted New York viewers by, among other things, publishing articles about New York, illustrated by photographs, taken in New York, depicting New York scenes and residents. On these facts,

defendant could easily foresee being "haled into court" in New York if – as is alleged here – it obtained four of those photographs by copying the images from the *New York Post* (where they were credited to a New York photographer), removing that credit, and republishing them on its New York-themed website. *See Cousteau Soc'y, Inc. v. Cousteau*, 498 F. Supp. 3d 287, 306 (D. Conn. 2020) (holding that defendant CCFF could reasonably foresee being haled into court in Connecticut where its websites "did target Connecticut residents").

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). *See also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1353 (3d ed. 2004) (service of process is "the means by which a federal court gives notice to the defendant and asserts jurisdiction over him"). Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment. *See Sheldon*, 2016 WL 5107072, at *6 ("failure to adequately prove proper service of court documents under [Fed. R. Civ. P.] 4 bars the entry of a default judgment"); *Lliviganay v. Cipriani 110 LLC*, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (lack of proof of proper service "is an independent obstacle to a default judgment").

Service may be made on a domestic or foreign corporation, partnership, or other unincorporated association "that is subject to suit under a common name" by following state law in the state where the district court is located. Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). New York law permits service on a domestic or foreign LLC by personal delivery of the required papers to any "agent" of the LLC "authorized by appointment to receive process," or to "any other person designated by the limited liability company to receive process." CPLR §§ 311-a(a)(iii), (iv). Plaintiff complied with § 311-a by personally serving the summons on Alison Rathmanner, at

Harvard Business Services, Inc., which according to the Delaware Department of State, Division of Corporations, is defendant's registered agent. (Dkt. No. 10.) The record therefore reflects adequate service of process.

## III.   LIABILITY

Following a default, the court must accept all well-pleaded factual allegations in the complaint as true, except those relating to damages. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). If those well-pleaded allegations establish the defaulting party's liability, the only remaining issue is whether plaintiff has provided adequate support for his requested damages or other relief. *See Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "Conversely, if the well-pleaded factual allegations in the complaint fail to state a claim upon which relief can be granted, no damages can be awarded, even if the post-default inquest submissions supply the missing information." *Mondragon v. Keff*, 2019 WL 2551536, at *4 (S.D.N.Y. May 31, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019).

### A.   The Copyright Act

To establish a violation of the Copyright Act, a plaintiff must demonstrate his ownership of a valid copyright and defendant's infringement – that is, copying – of original elements of the copyrighted work. *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010); *Malibu Media, LLC v. Doe*, 2015 WL 6116620, at *3 (S.D.N.Y. Oct. 16, 2015). Both requirements are satisfied here. The well-pleaded allegations of the Complaint, accepted as true, demonstrate that plaintiff owned and registered a valid copyright in each of the four Images, Compl. ¶¶ 12, 13, and that

10

Netventure infringed plaintiff's rights by copying, publishing, and displaying an unauthorized copy of each of them on Netventure's website. *Id.* ¶¶ 19-27. Plaintiff has therefore alleged that defendant violated the Copyright Act. *See Hirsch v. Sell It Soc., LLC*, 2020 WL 5898816, at *3 (S.D.N.Y. Oct. 5, 2020) ("Plaintiff has established ownership of a valid copyright in the Photo and that Defendant reproduced the Photo without Plaintiff's consent by publishing it on Defendant's commercial website. Accordingly, Plaintiff has established copyright infringement by Defendant.").

### B.       The DMCA

Plaintiff's well-pleaded allegations also establish that defendant violated the DMCA. 17 U.S.C. § 1202(b) provides that:

No person shall, without the authority of the copyright owner or the law —

(1)      intentionally remove or alter any copyright management information,

(2)      distribute . . . copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

(3)      distribute . . . copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law;

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

Copyright management information (CMI) includes the name of and other identifying information about the author or copyright owner of a work, "the information set forth on a notice of copyright," the "[t]erms and conditions for use of the work," and "links to such information." 17 U.S.C. §§ 1202(c)(1), (2), (3), (6), (7). Thus, to establish a violation under § 1202(b)(1), a plaintiff must show "(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Banxcorp*

11

*v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (collecting cases). The plaintiff must also establish that the removal or alteration "was done knowing that it would induce, enable, facilitate, or conceal an infringement." *Mango v. BuzzFeed, Inc*., 356 F. Supp. 3d 368, 377 (S.D.N.Y. 2019).

In the Second Circuit, "gutter credits," which provide the name of the copyright owner on a separate line of text below a photograph but above any actual article text, constitute CMI as that term is used in the DMCA. *Mango*, 356 F. Supp. 3d at 377-78. The gutter credit need not be on the photograph itself or even present in the photograph's metadata: it is sufficient if it appears below the photograph but above the text of the article. *Id.* If the gutter credit is intentionally removed, and the photograph is published without the original author's permission, the website publisher is liable for violating the DMCA. *Id.*; *see also Hirsch*, 2020 WL 5898816, at *3 (plaintiff established a violation of § 1202(b)(1) by demonstrating that defendant intentionally removed the gutter credit that appeared below plaintiff's photograph in the *New York Post* before publishing the same photograph, without any credit, on its website).

In this case, as alleged in the Complaint, each of the four Images originally appeared in the *New York Post* with a gutter credit, below the bottom left corner of the Image, attributing it to plaintiff. Compl. ¶ 18. However, when those same Images were published on Netventure's website (without plaintiff's permission), the gutter credits had been removed. *Id.* ¶ 24. Plaintiff further alleges that defendant "knew that [it] did not have permission to use the Images on [its] Website," and that it "intentionally falsified the Images' CMI," and "purposefully failed to credit Plaintiff," in order "to mislead the public into believing that Defendant either owned the Image[s] or have [sic] legitimately licensed [them] for use" on its website. *Id.* ¶¶ 27, 36. These allegations, taken as

12

true after default, are adequate to establish that defendant violated the DMCA. *Hirsch*, 2020 WL 5898816, at *3.

## IV.    DAMAGES

In his Proposed Findings, plaintiff asks only for monetary relief, specifically: (a) statutory damages for violating the Copyright Act under 17 U.S.C. §§ 101 and 504(c), in the amount of $34,000; (b) statutory damages for violating the DMCA under 17 U.S.C. §§ 1202(a) and (b), in the amount of $10,000; and (c) attorney's fees and associated costs under 17 U.S.C. §§ 505 and 1203(b), in the amounts of $4,235 and $728.50, respectively. *See* Prop. Findings ¶¶ 50, 57, 61.

### A.    Statutory Damages Under the Copyright Act

Under the Copyright Act, a plaintiff may elect statutory damages if he registered his copyrights prior to the infringement or within three months of first publication of the underlying works. 17 U.S.C. § 412(2). Plaintiff Miller is entitled to statutory damages, even though the infringement occurred before the copyrights were registered, because registration occurred shortly thereafter and within three months after the Images were first published in the *New York Post*. Compl. ¶ 13; Prop. Findings ¶¶ 30, 40.

A plaintiff electing statutory damages is entitled to an award of between $750 and $30,000 per infringed work, "as the court considers just." 17 U.S.C. § 504(c)(1). Where the infringement was "willful," the maximum possible award per infringed work rises to $150,000. *Id.* § 504(c)(2). An infringement is "willful" when the infringer (i) knew its conduct was infringing, or (ii) engaged in infringing conduct as a result of reckless disregard or willful blindness to the prospect that its conduct was infringing. *Bryant v. Media Right Prods.*, 603 F.3d 135, 143 (2d Cir. 2010); *see also Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005); *Agence France Presse v. Morel*, 2014 WL 3963124, at *3 (S.D.N.Y. Aug. 13, 2014).

13

The Copyright Act affords the trial court "wide discretion" in setting the amount of statutory damages. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986); *accord Noble v. Crazetees.com*, 2015 WL 5697780, at *6 (S.D.N.Y. Sept. 28, 2015); *Arista Records LLC v. Usenet.com, Inc.*, 2010 WL 3629688, at *4 (S.D.N.Y. Feb. 2, 2010), *report and recommendation adopted*, 2010 WL 3629587 (S.D.N.Y. Sept. 16, 2010). In this Circuit, courts are guided by the following factors in determining the appropriate measure of statutory damages for copyright infringement: (i) the expenses saved and profits earned by the infringer; (ii) the revenues lost by the plaintiff; (iii) the value of the copyright; (iv) the deterrent effect on those other than the infringer; (v) the willfulness of the infringer's conduct; (vi) whether the infringer cooperated in providing records to assess the value of the material infringed; and (vii) the likelihood the award will discourage the defendant from repeating its infringement. *See Bryant*, 603 F.3d at 144; *Noble*, 2015 WL 5697780, at *6; *Usenet.com*, 2010 WL 3629688, at *4.

"Awards of statutory damages serve two purposes – compensatory and punitive." *Fitzgerald Publ'g Co.*, 807 F.2d at 1117. On the punitive side, the statutory maximum is typically reserved for "truly egregious conduct such as where a defendant has been adjudged to have willfully infringed, yet continued the same pattern of behavior in contravention of court order." *EMI Apr. Music Inc. v. 4MM Games, LLC*, 2014 WL 325933, at *5 (S.D.N.Y. Jan. 13, 2014) (quoting *Tips Exps., Inc. v. Music Mahal, Inc.*, 2007 WL 952036, at *5 (E.D.N.Y. Mar. 27, 2007)), *report and recommendation adopted*, 2014 WL 1383468 (S.D.N.Y. Apr. 7, 2014). The court's broad discretion in awarding such statutory damages is well established in cases such as this, as "case law reflects a wide range of awards where there have been infringing uses of photographs." *Burch v. Nyarko*, 2007 WL 2191615, at *3 (S.D.N.Y. July 31, 2007). Here, plaintiff requests statutory damages in the amount of $8,500 per Image, totaling $34,000. Prop. Findings ¶ 50.

14

The well-pleaded allegations in plaintiff's Complaint, together with defendant's default, establish that the infringing conduct was willful. *See* Compl. ¶ 27; *Rodgers v. Anderson*, 2005 WL 950021, at *3 (S.D.N.Y. Apr. 26, 2005) ("defendants have defaulted and by virtue of their default are deemed to be willful infringers"). "However, not all willful conduct constitutes the kind of truly egregious conduct that justifies maximum damages." *Reilly v. Plot Commerce*, 2016 WL 6837895, at *9 (S.D.N.Y. Oct. 31, 2016) (internal citation and quotations omitted). Moreover, "cases where high statutory damages are awarded typically involve defendants who profit significantly despite repeated notices that they are infringing on the plaintiff's copyright." *Myeress v. Elite Travel Group USA*, 2018 WL 5961424, at *3 (S.D.N.Y. Nov. 14, 2018). Here, although defendant infringed four separate photographs, the misconduct occurred – and was discovered – over the span of approximately one month. Compl. ¶¶ 18-22. The record contains no allegation (much less evidence) of persistent misconduct by defendant "despite repeated notices" warning it to stop. *See Bass v. Diversity Inc. Media*, 2020 WL 2765093, at *4 (S.D.N.Y. May 28, 2020) (noting that modest statutory awards are common where there is no evidence that the defendant is a "serial copyright infringer"). Nor is there any evidence, estimate, or mention, in the record, of defendant's profits flowing from its infringing conduct.

Plaintiff asserts that his license fee would have been $1,700 per Image (or "$6,800 for all four," Prop. Findings ¶ 38), and that since courts commonly "apply a multiplier of three to five times the licensing fees to arrive at an amount for statutory damages," *id.* ¶ 49, he should be awarded $8,500 per work infringed. *Id.* ¶ 50. However, plaintiff has not submitted any admissible evidence as to his customary license fee. The Proposed Findings are signed only by his attorney, and the attached "comparable" license agreement, which appears to relate to a photograph taken by Miller in 2014, is both unsigned and unauthenticated. *See* Prop. Findings ¶ 38 & Ex. A.

15

Moreover, in *Mango*, where the plaintiff obtained a multiplier of five times his $750 licensing fee for a single infringed photograph, 356 F. Supp. 3d at 375, the resulting award was still modest ($3,750).

Under these circumstances, plaintiff's requested statutory damages award of $34,000 under the Copyright Act is too high. Because there is no evidence that defendant continued infringing over time, no evidence of defendant's profits, no admissible evidence as to plaintiff's usual or customary licensing fee, and no evidence that would suggest a particularly large award is needed to deter defendant from future infringement, I conclude that an award of $3,500 per violation of the Copyright Act would be "just." 17 U.S.C. § 504(c)(1). I therefore recommend, respectfully, that plaintiff be awarded $14,000 in statutory damages under the Copyright Act.

### B.      Statutory Damages Under the DMCA

Under the DMCA, "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B). Because the Copyright Act and the DMCA protect against different injuries,[3] a court may appropriately award damages under both statutes, so long as it "properly distinguishes among these injuries when it sets the amount of the award under each statute," avoiding duplication. *Reilly*, 2016 WL 6837895, at *8; *see also Mango*, 356 F. Supp. 3d at 378 (courts strive to "avoid[] duplicating compensation for similar conduct" under the Copyright Act and the DMCA). In awarding statutory damages under the DMCA, courts "consider [several] factors, namely, the difficulty of proving actual damages,

---

[3] Defendant's use of plaintiff's Images without permission "deprived [him] of the ability to control when and where [they] would be displayed, as well as the licensing fee [he] would ordinarily charge for such display." *Reilly*, 2016 WL 6837895, at *8. Defendant's removal of the gutter credit "deprived [plaintiff] of professional recognition for the display" on defendant's website "and – arguably – made it easier for other potential infringers to compound that injury." *Id.*

16

the circumstances of the violation, whether [d]efendants violated the DMCA intentionally or innocently, and deterrence." *Agence France Presse*, 2014 WL 3963124, at \*10.

In this case, plaintiff makes no effort to show what actual damages, if any, he suffered as a result of the DMCA violation (as opposed to the unlicensed copying and uncompensated display of the Images). Nor does he provide any evidence as to defendant's revenues obtained or costs avoided as a result of stripping the CMI from those Images. Consequently, plaintiff requests statutory damages under the DMCA at the lowest end of the range: $2,500 per Image, totaling $10,000. *See* Prop. Findings ¶ 57. Courts in this district often award the minimum figure where – as here – there is little or no evidence to show that the DMCA violation increased the actual injury to the plaintiff, and the damages submission is "bare-boned." *Jerstad v. New York Vintners LLC*, 2019 WL 6769431, at \*4 (S.D.N.Y. Dec. 12, 2019) (citing *Romanowicz v. Alister & Paine, Inc.*, 2018 WL 4762980, at \*7 (S.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018)) (internal citations omitted). I see no reason to depart from that practice here. *See Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F. Supp. 740, 769 (S.D.N.Y. 1988) (statutory damages should not provide plaintiff a windfall). Consequently, I recommend, respectfully, that plaintiff be awarded $10,000 in additional statutory damages under the DMCA.

### C.    Interest

Plaintiff does not expressly seek interest on his statutory damage awards. The Copyright Act "neither authorizes nor forbids prejudgment interest on an award of statutory damages." *Barclays Capital Inc. v. Theflyonthewall.com,* 700 F. Supp. 2d 310, 329 (S.D.N.Y. 2010) (citing *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 569 (2d Cir. 1994)), *rev'd in part on other grounds*, 650 F.3d 876 (2d Cir. 2011). The DMCA is similarly silent. Although some courts within

our Circuit "have awarded both statutory damages and interest on those damages in copyright cases," *Reilly*, 2016 WL 6837895, at *12 (collecting cases), I conclude – as I did in *Reilly* – that "there is no need for a discretionary award of prejudgment interest where the amount of the underlying statutory award is itself discretionary and can be set at a figure which compensates the plaintiff for, among other things, the time that has elapsed since the defendant infringed [his] rights." *Id.* Since my recommended statutory awards already take that elapsed time into account, it would be duplicative to add an interest award. I therefore recommend, respectfully, that no separate award of prejudgment interest be made.

### D.        Attorneys' Fees and Costs

Plaintiff also seeks attorneys' fees and costs under the Copyright Act and the DMCA, both of which permit such awards. 17 U.S.C. §§ 504, 1203(b)(4)-(5). An award of fees "lies within the sole and rather broad discretion of the Court." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006). In exercising that discretion, courts should consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014) (citation omitted). Given defendant's willful misconduct – which must now be deemed established – together with its failure to offer any defense to plaintiff's claims, attorneys' fees should be awarded in this case. Plaintiff requests fees in the amount of $4,235, plus $728.50 in associated costs, Prop. Findings ¶ 61, and has submitted the Declaration of Rayminh L. Ngo (Ngo Decl.) (Dkt. No. 32-1) to substantiate those figures.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The burden is on the fee applicant to provide evidence that "the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton*, 433 F.3d 204, 209 (2d Cir. 2005). A "prevailing market rate" should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Noble*, 2015 WL 5697780, at *9 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)) (alteration in the original).

Attorney Ngo, who has been admitted to practice in New York since 2010, attests that he spent 12.1 hours on this action – including preparation of the Proposed Findings – at the billing rate of $350 per hour. Ngo Decl. ¶ 7. Earlier tasks included prelitigation efforts to contact defendant; preparation of the Complaint; and preparation of the papers necessary to obtain the default. *Id*. ¶¶ 43, 4, 7. Additionally, Ngo attests that his firm "retained the services of Mr. Adeyinka A. Ojo, Esq. to appear for the Order to Show Cause hearing on November 5, 2019," *id*. ¶ 8, and attaches Ojo's Billing Report, in the amount of $273.50 for the court appearance ($125 per hour), travel, and parking. *Id*. Ex. B.

Both the hours expended and the rates charged by Ngo and Ojo appear reasonable. *See Broadcast Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp. 3d 184, 199-203 (S.D.N.Y. 2016) (finding hourly rates of $400 and $600 reasonable for two attorneys litigating a copyright case with non-legal staff assistance). Plaintiff's remaining expense reimbursement requests, backed by receipts, are similarly unobjectionable. Ngo Decl. Exs. C, D. The Court can take judicial notice of the $400 filing fee paid at the outset of this case. *See Global Brand Holdings, LLC v. Accessories Direct International USA, Inc*, 2020 WL 9762874, at *9 (S.D.N.Y. May 29, 2020) (collecting

cases).  I therefore recommend, respectfully, that plaintiff be awarded $4,235 in attorneys' fees and $728.50 in expenses.[4]

## V.      CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff Miller be awarded: (a) statutory damages under the Copyright Act in the amount of $14,000; (b) statutory damages under the DMCA in the amount of $10,000; and (c) attorneys' fees and costs in the amount of $4,235 and $728.50 respectively, for a total award of $28,963.50.

Plaintiff is directed to promptly serve a copy of this Report and Recommendation on defendant, and to file proof of such service.

Dated: New York, New York
      August 6, 2021

**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Lorna G. Schofield at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Schofield. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. See *Thomas v. Arn*, 474 U.S. 140 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

---

[4] Plaintiff included the full amount of Ojo's Billing Report as an expense.